# STATE OF MICHIGAN

# COURT OF APPEALS

ALEC DEMOPOLIS,

   Plaintiff-Appellee,

v

MAURICE R. JONES,

   Defendant,

and

ALEXANDER V. LYZOHUB,

   Appellant.

UNPUBLISHED
April 16, 2015

No.   320099
Macomb Circuit Court
LC No.   2012-000488-NO

Before:  Hoekstra, P.J., and Markey and Donofrio, JJ.

Per Curiam.

Plaintiff's former counsel, appellant Alexander V. Lyzohub, appeals by right the trial court's orders awarding him $9,000 in attorney fees and $2,153.91 in costs from a settlement in a personal injury case and denying his motion for reconsideration.  Appellant had sought one-third of the settlement after costs.  Because the trial court did not clearly err in finding that no contractual agreement existed and because the trial court did not abuse its discretion in determining a reasonable rate for attorney fees under a quantum meruit theory, we affirm.

This appeal arises from an attorney fee dispute in a personal injury case.  Plaintiff, then a minor, sustained an injury while playing basketball on the premises of defendant Maurice Jones.  Plaintiff's mother, Judi Demopolis, who was employed by appellant Lyzohub, served as plaintiff's next friend.  She originally signed a contingency fee agreement with attorney Todd Weglarz, who filed the personal injury lawsuit on February 2, 2012.  The agreement stated that Weglarz would receive one-third of whatever recovery was obtained through the lawsuit plus his costs. On October 23, 2012, a substitution of attorney was filed and appellant became plaintiff's attorney.

The parties agreed to settle the personal injury suit for $65,000.  Following the settlement, plaintiff, who was by this time 18 years old, removed appellant as his counsel over a dispute about whether appellant had agreed to handle the case pro bono.  Plaintiff also demanded

-1-

that defendant's attorney not release the settlement check to appellant for distribution. The trial court held a hearing to determine disbursement of settlement proceeds. Appellant sought one-third of the settlement after costs. He argued that he depended on his employee, Demopolis, to correctly sign and file a new contingency agreement, but she failed to do so. He contended that he was entitled to the benefit of the fee agreement plaintiff had with Weglarz or to the terms of the unsigned and unfiled agreement between plaintiff and appellant.

The trial court noted that the parties disagreed on whether there was an agreement that appellant would handle the case pro bono or for a one-third contingency. The court noted that the Michigan Code of Professional Conduct requires a contingency agreement to be in writing, and here it was not. Thus, the court found that no contingency fee agreement between the parties existed. Although there was testimony about the roles each person performed in the office, it was appellant's responsibility as the attorney to set forth in writing the fee agreement before undertaking representation. The court also found that there was no agreement to perform the work pro bono. Because there was no express agreement, the court determined that appellant was entitled to a reasonable fee. The court determined that appellant's costs were $2,153.91. Appellant was entitled to a reasonable fee for file preparation, review of medical documents, four depositions, a motion to show cause, a motion to compel, a case evaluation summary, and attendance for 45 hours at $200 a hour for a total of $9,000. The balance of the settlement would go to plaintiff.

On appeal, appellant asserts that he is entitled to a full one-third of the settlement under the principle of quantum meruit, that promissory estoppel applies, and that the trial court erred in reducing the fee awarded based on the court's determination that Demopolis, as next friend, did half the work on the case.

An award of attorney fees will be upheld on appeal unless the trial court's determination of the "reasonableness" issue was an abuse of discretion. *Jordan v Transnational Motors, Inc*, 212 Mich App 94, 97; 537 NW2d 471 (1995). This Court reviews a trial court's findings of fact for clear error and its conclusions of law de novo. *Glen Lake–Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004).

Appellant concedes in his brief on appeal that "without an active written fee agreement," he is "entitled to be compensated for the reasonable value of his service, based upon quantum meruit." (Emphasis omitted.) Notwithstanding that concession, appellant still contends that he is entitled to one-third of the settlement.

"The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006). A contract will be implied only if no express contract between the same parties exists that covers the same subject matter. *Id.* Here, given the lack of any physical evidence, the trial court did not clearly err in finding that no express contract existed; thus, recovery under a theory of quantum meruit is appropriate. Recovery under quantum meruit is based on the reasonable value of the services rendered—it is not based on any contractual amount, unless the parties have agreed otherwise. *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 330-331; 536 NW2d 886 (1995); see also *Reynolds v Polen*, 222 Mich App 20, 28; 564 NW2d 467 (1997)

("[Q]uantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee.").

A trial court's reasonable fee analysis begins "by determining the fee customarily charged in the locality for similar legal services" for which "the court should use reliable surveys or other credible evidence of the legal market." *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008). The customary fee should then be multiplied by the hours expended. *Id.* at 531. This is a starting point, and the court should then consider the "remaining *Wood*[1]/MRPC factors to determine whether an up or down adjustment is appropriate." *Id.* The six *Wood* factors are as follows:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982).]

The eight factors under MRPC 1.5(a), some of which overlap with the *Wood* factors, are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent." [*Smith*, 481 Mich at 530, quoting MRPC 1.5(a).]

In determining reasonable legal fees in this case, the trial court considered that appellant was an experienced attorney, that Demopolis had done a substantial amount of work on the case before appellant was retained, that only 20% to 30% of appellant's practice was in personal injury law, the relationship between the parties, the costs advanced, appellant's labor including motions and pleadings produced, the results, and the complexity of the case. The court

---

[1] *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982).

determined that an hourly rate of $200 was reasonable under the circumstances, which when multiplied by 45 hours yielded $9,000. The court noted that this hourly rate was slightly less than the Wayne County median of $230 and the personal injury median of $300.[2] Although the determination of reasonable fees is not an exact science, and a court could determine a different calculation of attorney fees, we find no abuse of discretion in the determination of this hourly rate. Particularly significant in this case is that when appellant took over the case, much of the work had already been done by Demopolis. Contrary to appellant's argument, the amount of personal injury law he practices is a factor in determining his skill and as such what a reasonable attorney fee is. Further, the trial court fully considered the labor he expended to determine the amount of time awarded. A review of the entire record shows that the case was not complicated and no legal issue arose contrary to appellant's position. With regard to the factual findings made by the trial court, these determinations were proper credibility and factual determinations made by the court in a contested case primarily decided between the testimonies of two witnesses. Appellant merely seems to disagree with the factual determinations. The trial court was required to weigh all the factors in determining a reasonable fee and therefore need not award a precise amount as compared to the median. Accordingly, we find no abuse of discretion in the trial court's determination of a reasonable fee in this case.

Appellant next argues that the trial court should have enforced the intended agreement and awarded him costs plus one-third of the remaining settlement under the theory of promissory estoppel. Appellant asserts that absent the actions of Demopolis, who was his employee, there would have been an enforceable fee agreement in the file. Appellant asserts that Demopolis informed him she would sign the agreement draft and file it as part of her duties. In a promissory estoppel action where the existence and scope of the promise is a question of fact, an appellate court should not overturn a trial court's determination that a promise exists unless it is clearly erroneous. *State Bank of Standish v Curry*, 442 Mich 76, 84; 500 NW2d 104 (1993).

The elements of a promissory estoppel claim are (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided. *Booker v Detroit*, 251 Mich App 167, 174; 650 NW2d 680 (2002), rev'd in part on other grounds 469 Mich 892 (2003). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made." *State Bank of Standish*, 442 Mich at 85. In determining whether a promise existed, this

---

[2] Appellant also argues that the trial court cited the wrong rate from the 2010 State Bar of Michigan (SBM) survey. We agree, but because the error was favorable to appellant, he has not demonstrated how the error harmed him. The trial court cited that the median rate for a Wayne County personal injury (plaintiff) attorney was $300. Contrary to appellant's argument that a rate of $350 should have been used, the correct median value from the 2010 SBM survey shows that Wayne County personal injury (plaintiff) attorneys was $288. It is not clear if the court was merely rounding $288 up to $300, but regardless, it is clear that appellant cannot improve his position based on the corrected, lower value.

Court must objectively examine the words and actions surrounding the transaction, the nature of the relationship between the parties, and the circumstances surrounding the parties' actions. *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999).

Here, the parties disagreed about whether there was an agreement, with plaintiff asserting that appellant agreed to handle the case pro bono and appellant stating that he was entitled to a one-third contingency fee. The trial court found that there was no agreement to indicate either possibility. In reviewing the factual findings of the trial court, we find no error in the court's finding that there was no promise. This case involved contrasting accounts by the parties involved without any other evidence. While there was contrary testimony, there was clear evidence that there was not a written, signed agreement to compensate appellant with one-third of the settlement; in fact, there was no agreement. The trial court was in a better position to assess the credibility of the parties. Therefore, we find that the trial court's ruling was not clearly erroneous, and it should not be disturbed. Consequently, because the court properly determined that no promise was made to appellant, appellant cannot recover on a theory of promissory estoppel.

Appellant lastly asserts that the trial court erred in finding that the contributions of Demopolis on the case justified a half deduction of his fee because she was his employee and worked on the case as part of her employment. Appellant misconstrues the trial court's ruling. The trial court did not state that it reduced the hours worked by appellant because of Demopolis's work. When speaking of her contribution, the trial court referred to her work on the case before appellant was retained. Further, the extent that other individuals contributed to the case outside of his firm was a valid factor to consider when determining a reasonable fee. The trial court did not clearly err in making this factual determination. There was contrary testimony about whether the work Demopolis performed on the case after appellant was retained was part of her employment duties. The trial court was in the best position to assess the witnesses' credibility, and we find no clear error.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio