*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA HOULE,

Plaintiff-Appellant,

v

EMC DEVELOPMENT, and
EDWARD M CZUPRYNSKI,

Defendants-Appellees.

UNPUBLISHED
May 20, 2021

No. 348480
Bay Circuit Court
LC No. 17-003755-AV

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Plaintiff Linda Houle appeals, as on leave granted from our Supreme Court,[1] the circuit court's opinion and order affirming the district court's decision to award her limited attorney fees under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*., and declining to sanction defendants EMC Development and Edward Czuprynski for alleged misconduct during this case. On appeal, plaintiff argues that the district court erred by (1) only awarding her reasonable attorney fees for one of the two attorneys involved in her case; and (2) declining to sanction defendants for alleged misconduct.

We agree with plaintiff that the district court erred by categorically declining to award her reasonable attorney fees for the second attorney but disagree that the district court erred by declining to sanction defendants. Accordingly, we affirm in part and reverse in part the circuit court's opinion and order, and remand to the district court for further proceedings concerning plaintiff's request for reasonable attorney fees.

## I. FACTS AND PROCEEDINGS

Defendant Czuprynski is an attorney and the managing member of defendant EMC Development, LLC, which is engaged in the business of leasing real estate. Between October 2013

---

[1] *Houle v EMC Dev*, 505 Mich 1030 (2020).

and September 2015, plaintiff leased an apartment from defendants. The relationship between defendant Czuprynski and plaintiff deteriorated and eventually collapsed when he learned that plaintiff helped another tenant learn about her tenant rights. Defendant Czuprynski retaliated against plaintiff by flattening her tires, destroying her vegetable garden, changing the locks to the garage and basement storage area, and repeatedly locking her out of her apartment. Plaintiff consequently moved out of the apartment in September 2015.[2]

Plaintiff filed suit against defendants, alleging 22 counts in her amended complaint: Counts I-VII alleged that defendants violated the anti-lockout statute, MCL 600.2918(2), by gluing her door shut on seven separate occasions in September 2015; Counts VIII-XIV alleged that defendants violated MCL 445.911(2) of the MCPA by the same conduct; Count XV alleged trespass as a result of defendants destroying her vegetable garden in September 2015; Count XVI alleged trespass as a result of defendants flattening her tires in June 2015; Count XVII alleged intentional infliction of emotional distress as a result of defendants' escalating misconduct previously referenced; Count XVIII alleged conversion as a result of the destruction of the vegetable garden; Count XIX alleged defamation as a result of defendant Czuprynski falsely stating on the Internet in October 2015 that she was slandering him; Count XX alleged defamation as a result of defendant Czuprynski falsely stating on the Internet in October 2015 that she was harassing him; Count XXI alleged defamation as a result of defendant Czuprynski falsely stating on "an attorneys' listserv known as Darrow" in March 2016 that she had stolen his personal property; and Count XXII alleged abuse of process as a result of defendants suing her for recovery of real property in September 2015 in a separate case that was eventually closed out because defendants misrepresented facts to the court.[3]

Defendants' answer to the amended complaint stated, "Neither admits nor denies," in response to the vast majority of allegations reflected in Counts I-XXII. The only exceptions were statements in which defendants incorporated by reference earlier paragraphs. The answer was signed by defendant Czuprynski.

Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(9) (failure to state a defense) and (C)(10) (no genuine issue of material fact), arguing that summary disposition was warranted because the "Neither admits nor denies" responses should be deemed admissions. The district court ultimately granted summary disposition in favor of plaintiff as to Counts I-XIV with respect to liability only, and denied summary disposition as to Counts XV-XXI. The case thus proceeded to trial.

At trial, plaintiff was represented by Kimberly King, and defendants were represented by defendant Czuprynski himself. One of plaintiff's key witnesses was Paul Stevenson. Stevenson testified that defendant Czuprynski and he became friends in law school in the late 1970s but were no longer friends as a result of the disagreements that occurred in 2015 primarily relating to

---

[2] As a result of his misconduct, defendant Czuprynski's license to practice law was suspended 90 days by the Attorney Discipline Board. See *Grievance Administrator v Czuprynski*, 18-16-JC (July 13, 2020).

[3] Count XXII was later dismissed by the district court.

Stevenson's new romantic relationship with plaintiff. In addition, Stevenson testified about defendant Czuprynski berating and harassing plaintiff on multiple occasions, which caused her distress. Stevenson had personal knowledge of these events, and was thus an important witness at trial, because plaintiff and he had a romantic relationship.

On cross-examination, Stevenson acknowledged that he helped to draft the first complaint, that he personally filed a grievance against defendant Czuprynski as a result of his conduct against plaintiff, and that plaintiff also filed a grievance against defendant Czuprynski as a result of the same conduct. Stevenson additionally acknowledged that he was "collaborating" with plaintiff's trial attorney, King. Later on cross-examination, the following exchange occurred on the record:

Q: Okay, did you ever advise her that there was legal action that could be taken over this locking her out through gluing the locks?

Ms. King: Judge, wouldn't that be attorney-client privilege --

* * *

The Court: Well, we'll see if he invokes that. I didn't know -- we'll find out if they were -- he was acting as her lawyer.

The Witness: To the extent I have given any advice, I suppose I should get her permission before stating anything. It's her -- attorney-client privilege belongs to the client, to the person.

Mr. Czuprynski: All right.

The Court: Okay, so, Mr. Stevenson, so some of the -- so you were representing Ms. Houle? Are you telling us that you were also serving as her lawyer?

The Witness: I was -- I'm not representing her in this case.

* * *

The Court: Okay, but what about to this -- things that arose from this particular case regarding these claims of trespassing, emotional distress, conversion, defamation, were you representing her on these things?

The Witness: Representing, uh, mm --

The Court: Well, the question is --

The Witness: I advised -- I would say I gave her information, your Honor. I gave her information, advised her, yes.

The Court: So you were serving as her -- a lawyer, is that what you're telling us?

The Witness: I was giving her lawyerly services, yes.

The Court: So are you tellin' us now you're invoking that privilege? Even though you were called as a witness by Ms. King, you've testified, you -- we've heard other things, but now you're telling me you wanna invoke that privilege?

The Witness: No, your Honor, I'm not saying that.

Shortly thereafter, defendant Czuprynski and Stevenson had another brief exchange about Stevenson's role in the case:

Q: Did you suggest to her [plaintiff] that she include the counts of conversion?

A: I discussed that with Ms. King based on the facts that we got from Ms. Houle.

Q: So you were acting as counsel with Ms. King?

A: We were collaborating.

Q: Right. And you were collaborating about this lawsuit that brings us to court today?

A: Yes.

Ultimately, the jury found that plaintiff sustained damages of $200 for each of Counts I-VII and damages of $250 for each of Counts VIII-XIV. Further, the jury found in favor of plaintiff on Count XV in the amount of $830, in favor of plaintiff on Count XVI in the amount of $500, and in favor of defendants on Counts XVII-XXI.

On May 26, 2017, plaintiff filed a motion for entry of judgment and attorney fees under MCL 445.911(2) of the MCPA, which provides for "reasonable attorneys' fees" for a prevailing plaintiff. The motion was signed by Jason Gower, King, and Stevenson. This was the first motion signed by Stevenson in the case. The attached affidavit of King requested attorney fees of $56,408.50, and the attached affidavit of Stevenson requested attorney fees of $111,951.45.

At a July 28, 2017 hearing on plaintiff's motion for attorney fees, King explained to the district court that Stevenson had been retained by Gower Law, King's law firm, to work on plaintiff's case and that he performed substantial out-of-court work. Thus, King argued, he was entitled to his reasonable attorney fees. The district court disagreed, explaining that (1) it was completely unaware that Stevenson was acting as counsel for plaintiff until he signed the motion requesting attorney fees; and (2) the request for about $111,000 created a "big question" because "it wasn't a difficult case." Specifically, the district court stated, in relevant part, as follows:

[The Court:] Mr. Stevenson was a witness in the particular case. He was a witness in the particular case. He never filed any documents.

-4-

Earlier today and yesterday, we did contact the Bay County Court . . . . just to make sure I wasn't overlooking anything, to see if there was anything ever filed indicating, and I'm gonna use this term co-counsel, that Mr. Stevenson was a co-counsel for the plaintiff.

And in speaking with one of the clerks here in Bay County, . . . she indicated to me that they went through all the file, they found nothing, other than this last document, uh, for the attorney fees that were filed that listed Mr. Stevenson as co-counsel for the plaintiff.

Because of the relationship that I just indicated on the record that these folks [Stevenson and plaintiff] had, uh, that relationship, and then now, all of a sudden, the Court's been handed this motion saying Mr. Stevenson is the co-counsel for the plaintiff. . . .

* * *

And -- and I just question that, even to this day, when I see his bill for in excess of a hundred thousand dollars. He never appeared in front of this Court, he never filed a pleading in this court, he never argued in front of the jury, he -- I never had any contact with Mr. Stevenson as co-counsel for plaintiff as it relates to this particular matter.

And, for those reasons, you know, there's a big question in my mind. . . . this particular case, I mean, it wasn't a really -- it wasn't a difficult case. It was a case dealing with a landlord who did something wrong. . . .

The district court added that it would award reasonable attorney fees to King and that the amount would be decided at a subsequent hearing.

At a September 13, 2017 hearing on plaintiff's motion for sanctions and attorney fees, the district court allowed Stevenson to place his arguments on the record as to why he was entitled to reasonable attorney fees but stated that it would maintain its original ruling for "the reasons placed on the record at that time." With respect to King's reasonable attorney fees, the district court acknowledged the multifactor test for such fees set forth in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), discussed the factors, and awarded King $28,204.25 in fees. Finally, the district court declined plaintiff's request for sanctions under MCL 600.2591 or MCR 2.114, stating simply that "[t]he Court doesn't feel that the defense of this particular action was a frivolous defense."

Plaintiff filed a proposed judgment on October 13, 2017. On October 23, 2017, defendants filed an objection to the proposed judgment, identifying two alleged errors: (1) "the proposed judgment would assess statutory interest on the sums that the court awarded as attorney fees; however, Michigan law only provides interest on money judgments, not attorney fees, MCL 600.6013(8)"; and (2) "MCR 7.202(7) requires specific wording . . . that disposes of all the claims and adjudicates the rights and liabilities of all the parties."

On October 30, 2017, defendants moved to set aside the October 13, 2017 proposed judgment for the reasons explained in their October 23, 2017 objection. Defendants argued that

under MCR 2.602 and MCR 1.108, the objection was timely filed within seven days because the seven-day period for filing such an objection, MCR 2.602(B)(3), did not expire until October 23, 2017, given the intervening weekend.

On about November 9, 2017, plaintiff filed responses to these motions, arguing that (1) it was frivolous to argue that the seven-day period for filing an objection to the proposed judgment did not expire on October 20, 2017; and (2) it was frivolous to argue that MCL 600.6013(8) does not provide for interest on attorney fees. Plaintiff sought sanctions under MCL 600.2591 and MCR 2.114.

On November 14, 2017, the district court held a hearing on defendants' objection to the proposed judgment and motion to set aside the judgment. Stevenson acknowledged that defendants were correct that the judgment lacked the requisite finality language, and the transcript indicates that he provided a proposed amended judgment to the court at that time. The district court stated that it would strike the portion of the proposed amended judgment reflecting Stevenson as co-counsel. In addition, defendant Czuprynski acknowledged that upon reviewing plaintiff's response to defendants' objection concerning interest on attorney fees, "I believe what they said is correct, um, so I'm withdrawing that part of the objection." Further, Stevenson requested that defendants be sanctioned for maintaining frivolous arguments concerning interest on attorney fees and the calculation of the seven-day objection period, but the district court declined to address that request because defendants had not yet had an opportunity to respond.

On January 23, 2018, the district court held a hearing on defendants' motions for a new trial and relief from judgment. The district court acknowledged that it lacked jurisdiction over the judgment because a claim of appeal had recently been filed by plaintiff, and it expressed confusion that plaintiff did so because "we had not resolved all the issues . . . there was still the cost issue and all the other things floatin' around." The district court thus declined to rule on defendants' motions for a new trial and relief from judgment, as well as plaintiff's motions for taxation of costs and sanctions.

Eventually, on March 6, 2019, the circuit court entered its opinion and order affirming the district court in all respects. With respect to the issues currently before this Court, the circuit court stated, in relevant part, as follows:

> On the question of attorney fees and sanctions, the trial judge had the opportunity to observe the proceedings before him, including the trial. Mr. Stevenson did not file a written appearance in the case until after trial. Likewise, he had not signed pleadings, and actually testified as a witness. Although those facts are not solely dispositive on this question, they're still relevant to the trial judge's determination. This court should not, on appeal, substitute its judgment for the trial court if the Court's determination is reasonable and principled. This court, after assessing the record on appeal, cannot find that the district courts [sic] determination as to attorney fees and sanctions was less than reasonable and principled.

Plaintiff sought leave to appeal in this Court, arguing that the lower courts erred by refusing to award Stevenson reasonable attorney fees and by refusing to sanction defendants. We denied

leave "for lack of merit in the grounds presented." *Houle v EMC Development*, unpublished order of the Court of Appeals, entered September 11, 2019 (Docket No. 348480).

Plaintiff then sought leave to appeal in our Supreme Court, arguing only that the lower courts erred by refusing to award Stevenson reasonable attorney fees. Our Supreme Court remanded to this Court "for consideration as on leave granted." *Houle v EMC Development*, 505 Mich 1030 (2020). We now therefore address the merits of plaintiff's arguments.

## II. ATTORNEY FEES

First, plaintiff argues that the lower courts erred by categorically refusing her request for Stevenson's reasonable attorney fees. We agree.

"A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689; 828 NW2d 400 (2012). "This Court reviews the trial court's findings of fact for clear error, and questions of law de novo." *Id*. at 690. "However, this Court reviews for an abuse of discretion a trial court's ultimate decision whether to award attorney fees." *Id*.

"[A]ttorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v Sterling Heights*, 471 Mich 700, 707; 691 NW2d 753 (2005). MCL 445.911(2) of the MCPA is one such statutory exception. At the time relevant to this case, MCL 445.911(2) provided as follows:

> Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.[4]

"One of the purposes behind . . . the MCPA is to provide, via an award of attorney fees, a means for consumers to protect their rights and obtain judgments where otherwise prohibited by

---

[4] Effective April 1, 2021, MCL 445.911 was amended to provide, in relevant part, as follows:

> (2) Except in a class action or as otherwise provided in subsection (3), a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees.

> (3) Except in a class action, a person who suffers a loss as a result of a violation of section [MCL 445.903*l*] may bring an action to recover actual damages or $5,000.00, whichever is greater, together with reasonable attorney fees. In an action brought under this subsection, the court may, in its discretion, award punitive damages.

MCL 445.903*l* concerns third-party delivery services of restaurant products.

monetary constraints." *Jordan v Transnational Motors, Inc*, 212 Mich App 94, 97-98; 537 NW2d 471 (1995).

In *Smith*, 481 Mich 519, our Supreme Court addressed the proper analysis for determining "reasonable" attorney fees as part of case-evaluation sanctions under MCR 2.403(O). The lead opinion listed the following six factors to consider:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Id*. at 529 (opinion by TAYLOR, C.J.), quoting *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982).]

In addition, the lead opinion observed that courts may also consider the following eight factors derived from MRPC 1.5(a):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent. [*Id*. at 530 (opinion by TAYLOR, C.J.), quoting MRPC 1.5(a).]

The lead opinion in *Smith* explained that "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a)." *Id*. (opinion by TAYLOR, C.J.). "This number should be multiplied by the reasonable number of hours expended in the case. . . . The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee." *Id*. at 531 (opinion by TAYLOR, C.J.). "Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." *Id*. (opinion by TAYLOR, C.J.).

In *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277; 882 NW2d 563 (2015), we concluded that the *Smith* framework applies to an award of attorney fees under the MCPA. *Id*. at

301 ("[W]e find that the framework set forth in *Smith* is the most appropriate framework for honoring the remedial purpose of the MCPA and the [federal Magnuson-Moss Warranty Act, 15 USC 2301 *et seq*.], and for achieving the goal of awarding a reasonable fee in these types of cases.").[5]

Initially, we note that the district court's apparent astonishment upon learning that Stevenson had performed a substantial amount of out-of-court legal work on the case, such as drafting briefs, is well-taken by this Court. During Stevenson's trial testimony, when King objected to a particular question from defendant Czuprynski on the basis of attorney-client privilege, the district court understandably questioned Stevenson about whether he had an attorney-client relationship with plaintiff. Although Stevenson did not directly make a misrepresentation to the district court, his responses were evasive and lacking in candor, if not outright deceptive. For example, when the district court asked Stevenson whether he was "representing" plaintiff in this case, the district court obviously was not inquiring whether Stevenson was actually presenting arguments to the jury or questioning witnesses on the record. The district court could plainly see for itself that he was not. Rather, the district court was inquiring whether Stevenson was "representing" plaintiff in the sense that he was acting as an attorney on her behalf. Thus, when Stevenson denied that he was representing plaintiff, he was correct in theory but nonetheless misled the district court. Similarly, when Stevenson told the district court that he gave plaintiff "information" and was giving her "lawyerly services," he was correct but nonetheless vastly downplayed his role in the case. And when Stevenson ultimately declined to invoke attorney-client privilege, he implicitly communicated to the district court that he did not believe that plaintiff and he had a sufficient attorney-client relationship to warrant doing so. In light of this exchange, it is understandable that the district court would be rather surprised to see Stevenson's signature on a filed document for the first time after trial.

With that in mind, we cannot identify any authority to establish that Stevenson acted unethically by testifying as a witness while simultaneously performing legal services on behalf of plaintiff, yet not informing the court or the opposing parties of his dual role.[6] MRPC 3.7 provides, in relevant part, as follows:

**Lawyer as Witness**

---

[5] Although MCL 445.911(2) provides that the trial court "may," not "shall" or "must," award reasonable attorney fees to a successful plaintiff, we have suggested that such an award is mandatory. See, e.g., *Lavene v Winnebago Industries*, 266 Mich App 470, 477; 702 NW2d 652 (2005) ("Although the MCPA does not address costs, under the plain language of MCL 445.911, plaintiffs are entitled to recover reasonable attorney fees."). In the absence of a contrary argument, for the purposes of this appeal, we assume that such an award is mandatory.

[6] We respectfully urge our Supreme Court to consider amending the court rules or the rules of professional conduct to clarify the disclosure obligation of an attorney-witness in such cases where he or she possesses a pecuniary interest in the outcome of trial due to the potential applicability of a fee-shifting statute.

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

State Bar of Michigan Ethics Opinion RI-226 (February 7, 1995), explains that MRPC 3.7(a) "only prohibits the lawyer from performing as advocate at trial, *i.e.*, one portion of the expected representation. The lawyer is not prohibited from taking the case, from negotiating with parties, or from performing trial preparation . . . ." The rationale for this prohibition, as explained by the comment to MRPC 3.7, is that "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." There was no such concern present here, however, because Stevenson did not act as an advocate to the jury.[7] Moreover, we cannot identify any authority indicating that Stevenson was required to inform the district court or opposing counsel of his specific role in the case, although doing so presumably would have been the more prudent course of action.[8]

---

[7] We note that under the predecessor rules to MRPC 3.7, DR 5-101 and DR 5-102, Stevenson presumptively would have been required to disqualify himself from the case because he knew that he would be called as a witness on plaintiff's behalf. See *Smith v Arc-Mation, Inc*, 402 Mich 115, 118; 261 NW2d 713 (1978) ("DR 5-101(B) and DR 5-102(A) prohibit a lawyer from accepting or continuing in employment if he 'knows' or 'learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client' except in certain situations delineated in DR 5-101(B), subds. (1) through (4).").

[8] In State Bar of Michigan Ethics Opinion RI-281 (September 11, 1996), the question before the Bar was as follows: "The lawyer asks if representation of the client in the divorce action may be ethically undertaken, and whether the lawyer may serve as the trial advocate." The opinion explained that the lawyer may assume representation and handle "pretrial matters" but added the following caveat:

> But even when the lawyer's testimony is expected to advance the client's interests, *the client must be warned in advance that the adversary may move to disqualify the lawyer under MRPC 3.7(a)*. It is possible that the prospect of such a disqualification on the eve of, or at trial, would be construed as limiting the lawyer's ability to represent the client, *i.e.*, where the lawyer may handle only part of the case and would be forced to bring a firm member in to try the case on the eve of trial. Such a limitation on the representation, if material, would itself trigger MRPC 1.7(b). The client must be counseled, MRPC 1.4(b), and must consent to the

As noted previously, a reasonable reading of the district court's opinion on the record at the July 28, 2017 hearing indicates two reasons for declining to award Stevenson reasonable attorney fees. These two reasons are (1) Stevenson never indicated to the district court that he was acting as an attorney on behalf of plaintiff; and (2) the request for about $111,000 was excessive in light of the relatively simple issues involved in this case. In our view, neither reason justifies the categorical denial.

With regard to the first reason, and again acknowledging the district court's frustration, we cannot identify any authority indicating that an attorney is required to inform a court about his or her involvement in the case as a condition to recovering attorney fees, regardless of whether he or she is a testifying witness. MCR 2.117(B)(1), which concerns appearance by attorney, provided that "[u]nless a particular rule indicates otherwise, any act required to be performed by a party may be performed by the attorney representing the party." And MCR 2.117(B)(2)(b) provided that "[i]f an attorney files an appearance, but takes no other action toward prosecution or defense of the action, the appearance entitles the attorney to service of pleadings and papers[.]" These two rules suggest that the purpose of an appearance is to allow the attorney the ability to act as an agent of the client and to receive papers filed with the court. By negative implication, the purpose of an appearance is not to inform the court or the opposing party who is working on the case.[9] Further, MCR 2.114(C)(1) provided that "[e]very document of a party represented by an attorney shall be signed by at least one attorney of record." This rule did not require that the attorney who actually drafted the document sign his or her name. Moreover, the cases concerning awards of attorney fees that we reviewed did not suggest a rule that the court must be made aware beforehand of every attorney who is working the case. Accordingly, the district court erred by concluding otherwise.[10]

With regard to the second reason, we agree with plaintiff that the relative simplicity of the issues cannot justify a categorical denial of reasonable attorney fees, even if the original fee request is excessive. The fourth *Smith* factor is "the difficulty of the case." *Smith*, 481 Mich at 529 (opinion by TAYLOR, C.J.). Thus, the lack of difficulty is a factor that would perhaps weigh in favor of a lower award of reasonable attorney fees. But there is no language in *Smith* to suggest that the lack of difficulty would itself justify a categorical denial of reasonable attorney fees.

---

planned method for dealing with the potential MRPC 3.7 disqualification issue. See ABA i89-1529. [Emphasis added.]

The italicized language could be understood as suggesting that the opposing counsel should be made aware of the lawyer's dual role. However, we decline to address that novel issue today.

[9] The trial occurred before MCR 2.117 was amended in 2018 to allow for "limited scope representation," which includes the drafting of documents by an attorney who only files a "limited appearance." See MCR 2.117(C)(2).

[10] MCR 2.626 provides that "[a]n award of attorney fees may include an award for the time and labor of any legal assistant who contributed nonclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria set forth in Article 1, § 6 of the Bylaws of the State Bar of Michigan." If an award of attorney fees may encompass the time and labor of such a legal assistant, we believe that it is logical to similarly conclude that an award of attorney fees may encompass the time and labor of an attorney acting in essentially the same role.

-11-

Indeed, we are aware of no comparable instance—whether in the context of the MCPA, case evaluations, or any other situation in which reasonable attorney fees must be awarded to a prevailing litigant—where otherwise mandatory reasonable attorney fees may categorically be denied because the issues involved are simple. By analogy, in the context of the MCPA, this Court has noted that trial courts cannot rely upon the relatively low "dollar value and the result of the case" to justify a low award of reasonable attorney fees because doing so would undermine the remedial purpose of MCL 445.911(2). See *Jordan*, 212 Mich App at 98. "Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients." *Id*. The same is true here—if the relative simplicity of an MCPA case necessarily resulted in a low or non-existent award of reasonable attorney fees, then it would be economically difficult for an attorney to justify taking an MCPA case with relatively simple legal issues if the case could become more complex and time-consuming than expected. We therefore respectfully disagree with the district court that the simplicity of the issues may justify a categorical denial of reasonable attorney fees under MCL 445.911(2).

Accordingly, because the district court erred in its stated reasons for categorically denying Stevenson reasonable attorney fees, it abused its discretion, and we must remand to that court for further proceedings.[11] For clarity, we note that Stevenson's candor to the district court—or lack thereof—may be a factor on which it may rely in determining the ultimate award of attorney fees. See *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.) (explaining that the *Wood*/MRPC 1.5(a) factors "have not been exclusive, and the trial courts could consider any additional relevant factors").

## III. SANCTIONS

Second, plaintiff argues that the district court erred by declining to sanction defendants. We disagree.[12]

---

[11] To the extent that the district court may be understood as categorically denying the request for reasonable attorney fees because plaintiff and Stevenson had a romantic relationship, we do not find such a reason persuasive. See *Rickley v Co of Los Angeles*, 654 F3d 950, 955 (CA 9, 2011) ("There is . . . no basis for a bright-line prohibition on awarding fees to successful civil rights plaintiffs who are represented by their attorney-spouses.").

[12] We note that the sanctions issue may not be properly before us. In her original application for leave to appeal in this Court, plaintiff raised both issues that she now raises. However, in her application for leave to appeal in our Supreme Court, plaintiff only raised the issue concerning attorney fees; she did not raise the instant issue concerning sanctions. The court rule governing applications for leave to appeal in our Supreme Court, MCR 7.305, provides that "[u]nless otherwise ordered by the Court, an appeal shall be limited to the issues raised in the application for leave to appeal." MCR 7.305(H)(4)(a). MCR 7.305(H)(4)(a) suggests that the sanctions issue is not properly before this Court because her "appeal" in our Supreme Court did not raise that issue, and our Supreme Court remanded *that* appeal to this Court. Regardless, we will address the issue and, for the reasons explained herein, find it to be meritless.

-12-

"A trial court's findings regarding whether a claim or defense was frivolous and whether sanctions may be imposed are reviewed for clear error." *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 585; 887 NW2d 205 (2016).

At the time relevant to this case, MCR 2.114 provided, in relevant part, as follows:

> (D) **Effect of Signature**. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

> (1) he or she has read the document;

> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> (E) **Sanctions for Violation**. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

> (F) **Sanctions for Frivolous Claims and Defenses**. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

As this Court explained in *Guerrero v Smith*, 280 Mich App 647, 677-678; 761 NW2d 723 (2008):

> Pursuant to MCR 2.114(D), an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed. Under MCR 2.114(D), the signature of a party or an attorney is a certification that the document is "well grounded in fact and . . . warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and that "the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions pursuant to MCR 2.114(E). MCR 2.114(E) states that the trial court "shall" impose sanctions upon finding that a document has been signed in violation of the rule. Therefore, if a violation of MCR 2.114(D) has occurred, the sanctions provided for by MCR 2.114(E) are mandatory. [Citations omitted.]

Plaintiff argues that sanctions should have been imposed under MCR 2.114 for four reasons. We will address each reason in turn.

First, plaintiff argues that sanctions were warranted because defendants repeatedly stated "Neither admit nor deny" in their answer to her amended complaint, when it was obvious that defendant Czuprynski possessed personal knowledge that her allegations were true. For instance, defendants stated "Neither admit nor deny" in response to allegations that defendant Czuprynski personally glued the locks to plaintiff's apartment door. In fact, defendant Czuprynski acknowledged doing so on more than one occasion at trial.

The "Neither admit nor deny" responses were not specifically recognized by MCR 2.111.[13] Under MCR 2.111(E)(1), any allegation to which defendants replied "Neither admit nor deny" was deemed admitted.[14] See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 348 n 9; 833 NW2d 384 (2013). See also *Pitcher v Pitcher*, 314 Mich 648, 649; 23 NW2d 195 (1946) ("Defendant's answer to many of plaintiff's charges is that he neither admits nor denies the charges. The matters being such that he must be considered as having personal knowledge of them, his answer in practical effect stands as an admission.").

Nonetheless, the district court did not clearly err by finding that the "Neither admit nor deny" responses should not be sanctioned. Defendants did not deny the allegations, nor did they state that defendant Czuprynski lacked knowledge of the allegations. They simply engaged in a relatively common practice, albeit one that is not specifically authorized by the court rules. The appropriate "sanction" for such responses, as our Supreme Court indicated in *Pitcher*, is to deem the allegations admitted. See *Pitcher*, 314 Mich at 649.[15] The implicit logic in plaintiff's

---

[13] MCR 2.111(C) provides as follows:

> **Form of Responsive Pleading**. As to each allegation on which the adverse party relies, a responsive pleading must
>
> (1) state an explicit admission or denial;
>
> (2) plead no contest; or
>
> (3) state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of an allegation, which has the effect of a denial.

[14] MCR 2.111(E)(1) provides as follows: "Allegations in a pleading that requires a responsive pleading, other than allegations of the amount of damage or the nature of the relief demanded, are admitted if not denied in the responsive pleading."

[15] Although *Pitcher* was decided before MCR 2.114 was enacted, its reasoning seemingly applies with equal force here. Under MCR 2.111(E)(1), the "Neither admit nor deny" responses would be deemed admissions. We note that plaintiff has only requested monetary sanctions and has not argued that summary disposition should have been granted in her favor on all counts in her amended complaint.

argument—that defendants were affirmatively *required* to admit her allegations—has not been supported by any authority. Nor could it be—MCR 2.111(C)(2), for example, allows a party to respond with "no contest." The "Neither admit nor deny" responses here were akin to "no contest" responses.[16]

Second, plaintiff argues that sanctions were warranted because trial testimony and her trial exhibit 7 showed that in September 2015, defendant Czuprynski back-dated by one day a seven-day "notice to quit" so he could evict her earlier. We conclude that the district court did not clearly err by declining to sanction defendant Czuprynski for his conduct in this respect. MCR 2.114(A)(1) provided that "[t]his rule applies to all pleadings, motions, affidavits, and other papers provided for by these rules." And the "notice to quit" is provided for by statute, not court rules. See MCL 600.5714.

Third, plaintiff argues that sanctions were warranted because defendants filed a frivolous motion asserting that MCL 600.6013(8) provides that statutory interest does not accrue on attorney fees. MCL 600.6013(8) provides as follows:

> Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. *Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs.* In an action for medical malpractice, interest under this subsection on costs or attorney fees awarded under a statute or court rule is not calculated for any period before the entry of the judgment. *The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney.* [Emphasis added.]

The italicized language, "Interest under this subjection is calculated on the entire amount of the money judgment, including attorney fees," clearly establishes that interest accrues on attorney fees. Therefore, in theory, the district court could have imposed sanctions against defendants because their written argument to the contrary was not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" under MCR 2.114(D)(2). However, defendants promptly acknowledged at the following hearing that the argument was incorrect and that they were no longer maintaining it. And MCR 2.114(E) provided

---

[16] Plaintiff also argues that the "Neither admit nor deny" responses were sanctionable under MCL 600.2591 as well. See MCL 600.2591(1) ("Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney."). We disagree for the reasons already discussed.

that a court shall impose "an appropriate sanction" for a wrongfully filed document. Here, given the substantial litigation that occurred in the district court, as well as the fact that defendants acknowledged the error, the district court did not clearly err by implicitly finding that "an appropriate sanction" for a single sentence discussing statutory interest on attorney fees was nothing whatsoever.

Fourth, plaintiff argues that sanctions were warranted because defendants filed a frivolous motion to set aside the judgment asserting that the court rules "permitted the late filing of [their] objections." Once again, the proposed judgment was filed on October 13, 2017 (a Friday), and defendants filed objections on October 23, 2017 (a Monday). MCR 2.602(B)(3) provides as follows:

> Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the notice and proof of service along with the proposed judgment or order.[17]

MCR 1.108(1) provides as follows:

> The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order.

We do not believe that defendants' argument was frivolous. One reading of MCR 2.602(B)(3) is that the language "[w]ithin 7 days," in this context, means that defendants had until the following Friday to file objections. That is, "[w]ithin 7 days" of Friday, October 13, 2017, was Friday, October 20, 2017. This interpretation is consistent with plaintiff's interpretation.

But another interpretation is consistent with defendants' interpretation. Plaintiff mailed her proposed judgment to defendants on Friday, October 13, 2017. Under MCR 2.107(C)(3), service was accomplished on that date. Further, under MCR 2.602(B)(3), defendants were required to file objections "within 7 days after service of the notice." And MCR 1.108(1) provides that "[t]he day of the act, event, or default after which the designated period of time begins to run is not included." Thus, the seven-day period began to run not on Friday, October 13, 2017, but on Saturday, October 14, 2017—and presumptively expired on Saturday, October 21, 2017. However, MCR 1.108(1) provides that when the period expires on a Saturday, the period is extended to the next business day on which the court is open—in this case, Monday, October 23, 2017.

---

[17] MCR 2.107(C)(3) provides that "[s]ervice by mail is complete at the time of mailing."

At a minimum, even if defendants were incorrect that the seven-day period for objections expired on October 23, 2017, it was hardly unreasonable for them to so assert. Thus, the district court did not clearly err by declining to sanction defendants on this basis.

Finally, plaintiff argues that sanctions are warranted because defendants failed to appear in court on August 10, 2017, for a scheduled hearing. According to plaintiff, the failure to appear constituted indirect contempt. It is true that the failure to appear in court when ordered to do so constitutes indirect contempt. See *In re Contempt of McRipley*, 204 Mich App 298, 301; 514 NW2d 219 (1994). However, contempt of court requires a "wilful act, omission, or statement." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 387; 853 NW2d 421 (2014) (cleaned up). Here, the transcript of the August 10, 2017 hearing indicates that defendant Czuprynski simply believed that the hearing was scheduled for 9:00 a.m., not 8:15 a.m. There is nothing in the record to indicate that he willfully failed to appear in court on that date. Thus, the district court did not clearly err by refusing to impose sanctions for his failure to appear.

## IV. CONCLUSION

We affirm the circuit court to the extent that it upheld the district court's decision to not sanction defendants, reverse the circuit court to the extent that it upheld the district court's decision to deny Stevenson reasonable attorney fees, and remand to the district court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan